FRANCISCO ALMODÓVAR, Plaintiff and Appellant, *v.* JUAN G. NOLLA, Defendant and Appellee.

No. 12650. Decided June 22, 1962.

*Francisco M. Cadilla, Armindo Cadilla Ginorio, Lemuel Toledo, Rafael Buscaglia* for appellant. *Francisco M. Susoni* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Mercedes Goitía widow of Olmo was the owner of the following property: Rural, situated in the ward of Hato Abajo of Arecibo, having an area of 55.433 cuerdas; bounded on the north by lands of Manuel Pérez, the Arecibo–Hatillo road, and lands of The People of Puerto Rico where the district jail is located; on the south by the Santiago River and lands of Andrés García; on the east by lands of the heirs of Pérez, Miguel Correa, and by the Santiago River; and on the west by lands of The People of Puerto Rico, the railway track of the American Railroad Company of Puerto Rico, lands of Andrés García and Márquez Hermanos. This property originally consisted of 42.94 cuerdas, but according to a survey made by Julio T. Martínez in 1923 it had an additional area of 12.48313 cuerdas, which added to the 42.94 cuerdas, make a total area of 55.42313 cuerdas (Tr. Ev. 223–24).

In 1925 Mercedes Goitía widow of Olmo segregated from the said rural property the following parcel: Rural, in the ward of Hato Abajo, Arecibo, having an area of 9 cuerdas and approximately 73 hundredths, equivalent to 3 hectares, 82 ares, and 43 centiares. It is bounded on the north by lands of The People of Puerto Rico and highway No. 2; on the south by the remainder of the property from which it was segregated; on the east by Padilla Development; and on the west by the railway track of the American Railroad Company and The People of Puerto Rico. It is enclosed within the following points: starting at a point on the southern side

of highway No. 2 where the property of Mercedes Goitía adjoins that of The People of Puerto Rico, and thence East, 167 meters along the southern side of that road; thence South, 5 degrees, 40 minutes East, 131 meters; thence South, 20 degrees, 20 minutes East, 83 meters; thence West, approximately 217 meters on the east side of the railway track of the American Railroad Company; thence Northeast, along the eastern side of the track of the American Railroad Company, approximately 148 meters, to a point on the southern boundary of the property of the People of Puerto Rico which divides the said property from the lands of Mercedes Goitía, a distance of 67 meters; thence North, approximately 85 meters to the point of beginning. It is recorded at folio 178, volume 134 of Arecibo, property No. 6016, first entry. This portion of approximately 9.73 cuerdas was urbanized by Mercedes Goitía widow of Olmo and is at present known as Olmo Development.

In 1929, while Mercedes Goitía widow of Olmo was still the owner of the remainder of the property of 55.433 cuerdas as well as of the parcel of approximately 9.73 cuerdas, the latter having been urbanized, she segregated from the parcel of approximately 9.73 cuerdas a lot of 16,490 meters which was 79 meters long on the north side; 209.25 meters on the east and west; and 105 meters on the south. It was bounded on the north by Vicente Aguirre, Carlos Mejías, Juan Canals, and the Arecibo–Hatillo road; on the south by No. 2 Avenue of Olmo Development, an extension of Calle Nueva; on the east by Concepción Pérez and lots of Padilla Development; and on the west by Street No. 2 of Olmo Development. It is recorded at folio 99, volume 152 of Arecibo, property 6772, first entry.

It seems that the entire property of 55.433 cuerdas was originally mortgaged in favor of the Federal Land Bank of Baltimore, and that thereafter the bank agreed to liberate from the mortgage the parcel of approximately 9.73 cuerdas, inasmuch as the lot of 16,490 meters which was segregated from the parcel of approximately 9.73 cuerdas and which is property 6772 was in turn mortgaged in favor of Félix Mauro Ginorio, together with properties 6773, 6774, and 6775, all of which are situated in Olmo Development. The parties in this litigation acquired title as a result of the foreclosure of both mortgages. The remainder of the 55.433 cuerdas was adjudicated at public auction to Juan G. Nolla who on the date of this litigation is still the owner. The lot of 16,490 square meters—property No. 6772—was adjudicated, among others and at public auction, to Félix Mauro Ginorio.

Regarding the latter lot, excluding the segregations made by each owner, Félix Mauro Ginorio conveyed during his ownership to Félix Mauro Ginorio, Jr. 13,892.25 square meters; Félix Mauro Ginorio, Jr. conveyed to Francisco Román 13,079.75 square meters; Francisco Román conveyed to José M. Toledo 9,665.186 square meters; and José M. Toledo conveyed to Francisco Almodóvar, who on the date of this judgment is still the owner, the same 9,665.186 square meters which the former had acquired.

In each and every one of these transactions the description of the southern boundary of the lot of 16,490 meters— "No. 2 Avenue, Calle Nueva extension"—remains unaltered. Similarly, in the cession and conveyance of streets made by Mercedes Goitía widow of Olmo in favor of the Municipality of Arecibo by deed No. 91 of May 13, 1929, executed before Notary Francisco M. Cadilla, a description of Streets Nos. 2 and 3 of Olmo Development which run from north to south appears as starting at highway No. 2 (Arecibo–Hatillo)

"and ending at No. 2 Avenue, Calle Nueva extension." A graphic representation, *grosso modo*, of such boundary would be as follows:

The five geometric blocks bounded on the north by highway No. 2 running from Arecibo to Hatillo, on the south by No. 2 Avenue, Calle Nueva extension, on the east by the urban detour of the military road, and on the west by the railway track, compose what is known as Olmo Development, located on the approximately 9.73 cuerdas which were segre-

gated from the property of 55.433 cuerdas belonging to Mercedes Goitía widow of Olmo.

According to the allegations made in the former District Court of Arecibo by the defendant–appellee himself, Juan G. Nolla, the property which he acquired at public auction by deed No. 109 of November 4, 1935, executed before Notary Gustavo Zeno Sama in his favor by Francisco Miranda Martínez, Marshal of the District Court of Arecibo, is described as follows: Rural, consisting of 45.743 cuerdas. It is bounded on the north by *Olmo Development* and Concepción Pérez; on the south by the Santiago River and lands of Andrés García; on the east by the Heirs of Viñas and Manuel Pérez, formerly, now Miguel Correa and Concepción Pérez; and on the west by the railway track of American Railroad Co., Andrés García, and Márquez Hnos., the description of which appears in the Registry of Property at folio 4, volume 129 of Arecibo, entry 21.

This action arose because when defendant–appellee surveyed the remainder of the property of 45.743 cuerdas acquired by him by deed of auction, he found that it had only 43.748 cuerdas, and he then took all the land occupied by the Calle Nueva extension and part of the southern block near the detour of the military road in order to complete 45.178 cuerdas (Tr. Ev. 46). On the other hand, the new survey of the geometric blocks situated in the segregation of approximately 9.73 cuerdas shows an area of 11.5317 cuerdas in favor of Olmo Development (Tr. Ev. 51, *in fine*, and 52).

As respects the parties, the portion in litigation is reduced to 5619.32785 square meters, equivalent to 1.4297 cuerdas, situated along the entire southern point of the lot of 16,490 square meters which Mercedes Goitía widow of Olmo segregated and mortgaged in favor of Félix Mauro Ginorio, and which the latter acquired at public auction in a mortgage-foreclosure proceeding instituted by the latter against

the former, and which belongs after said segregation and conveyances to Francisco Almodóvar.

The hearing of the case having been held, the plaintiff introduced abundant documentary and oral evidence and the defendant rested on certain assertions obtained during the cross-examination of expert surveyor Fusté which are in conflict with his direct testimony and on two certifications issued by the clerk of Arecibo as to the dates in which both parties had received the possession of the auctioned properties from the hands of the court marshal. In dismissing the complaint, the trial court concluded that, it having appeared that the plaintiff's portion had 1.8557 cuerdas more, and it having appeared that the defendant's remainder had an area of 2.169 cuerdas less, the plaintiff was bound to establish such appropriation and had failed to do so; that expert surveyor Fusté, in testifying in favor of the plaintiff, had "described graphically the defendant's reason in a definitive manner"; that it was convinced from the inspection that the 5,619.32785 square meters and the remainder of the defendant's property form one single body of land, and that its boundaries with the parcel of 9.73 cuerdas are defined and clear and ascertainable at sight; that, on the other hand, it had seemed strange to the court that since March 1, 1944 the property in litigation had been conveyed by sale four times and that none of the vendees had held the possession at any time; that the registration in the Registry of Property of the portion of 5,619.32785 square meters by the predecessor in title of the plaintiff (Mercedes Goitía widow of Olmo) was an error (because) the nine cuerdas segregated from the main property were devoted to a development (and) the development of an urbanization plan entails the study and determination of the lots and streets, so that any excess or shortage is easily determined in projects of this kind; that there is no reason why this registration had to be different from that of the other lots of the development if the plaintiff is satis-

fied that the portion object of this litigation is part of the 9.73 cuerdas which were fully urbanized. So far the reasons stated by the trial court.

The fact that the parcel of approximately 9.73 cuerdas appeared to have a larger area and the remainder of 45.743 cuerdas a smaller area, does not give rise to any state of law which may point to the solution of this case, regardless of whether the expert for the plaintiff was the one who established the increase or diminution of the respective perimeters. What determines the application of the law is the fact that the two properties surveyed be comprised within the boundaries described at the time of the sale, as we shall presently see. The starting point of this study must be the description of the southern boundary of property 6772, namely, the lot of 16,490 square meters which was acquired, among others, by Félix Mauro Ginorio. It appears from the evidence that Mercedes Goitía widow of Olmo mortgaged in favor of Félix Mauro Ginorio, by deed No. 49 of March 23, 1929, executed before Notary Francisco M. Cadilla and which was recorded in the Registry of Property of Arecibo on April 12, 1929 (Tr. Ev. 231–32), four parcels of Olmo Development which are recorded as properties Nos. 6772, 6773, 6774, and 6775. Property 6772 constitutes the lot of 16,490 square meters to which we have made reference hereinabove.

The southern boundary of property 6772, which in turn constitutes the said lot of 16,490 square meters, was described since the beginning and was recorded in the Registry of Property since April 12, 1929 as follows: South, "No. 2 Avenue of Olmo Development, Calle Nueva extension." Exhibit 12 of the plaintiff is an eloquent graphic demonstration of the testimony of expert surveyor Fusté and contains an exact reproduction of the registry record of property 6772. However, the evidence for the plaintiff on the said southern boundary of property 6772 where the parcel in litigation is situated, does not end there. Witnesses Francisco Román

Rodríguez, Manuel Román Alonso, and José A. Agostini explained that No. 2 Avenue of Olmo Development was an extension of Calle Nueva.

Witness Francisco Román Rodríguez testified that he had lived in Olmo Development (Tr. Ev. 56); that he is acquainted with the southern boundary because he lived there for about 10 years (Tr. Ev. 57); that the Calle Nueva extension started near the railroad track and extended at the beginning alongside Calle Nueva, and that that section was then called No. 2 Avenue, Calle Nueva extension; part of No. 2 Avenue had been constructed (Tr. Ev. 57); that there used to be a wire fence in Calle Nueva extension and that he used to pass every day by the extension where the lots are situated (Tr. Ev. 58). Witness Manuel Román Alonso testified that in 1926, when he was living in Olmo Development, No. 2 Avenue started at the railroad track and ended at Calle Nueva (Tr. Ev. 66); that in 1926 a portion of No. 2 Street (avenue) was stone paved and that the other portion which was not paved but was used by all pedestrians was a dirt road, a public thoroughfare, No. 2 Avenue as far as Calle Nueva, and that "all those on Calle Nueva and myself, who worked in a shop, and everybody traveled along that avenue"; that on the southern part of that avenue there were some old wires (Tr. Ev. 66) (because) there were animals which ate and cows which pastured around there (Tr. Ev. 67); that in 1936, while he was still living there, he saw some of Nolla's workers putting up some wires farther north (Tr. Ev. 68); that that road disappeared when the wires were removed and sugar cane was planted (Tr. Ev. 68).

Civil engineer José A. Agostini testified that he lived 14 years in Arecibo since 1932 and that he was acquainted with Olmo Development (Tr. Ev. 69); that part of Calle Nueva runs through Padilla Development which adjoins a branch of the road which was constructed lately, a military road to

the west of Olmo Development; that he was and is acquainted with No. 2 Avenue of Olmo Development and Calle Nueva extension (Tr. Ev. 70); that No. 2 Avenue ran exactly in front of Olmo's house "as far as a train stop, as far as the track where the development is constructed, (and) that it has sidewalks and curbs, and then extended as far as Calle Nueva where (No.) 2 Avenue ended"; that "next to the entrance of Olmo's house . . . there was an extension of (No.) 2 Avenue as far as Calle Nueva" (Tr. Ev. 71); that on the extension "there was a fence of logs and barbed wire and that it was the portion known as (No.) 2 Avenue"; that Calle Nueva extension starts at the branch of the military road, that that street was paved, and is an extension of a street which runs as far as the uppermost portion of the town of Arecibo and then ends on another street which he does not remember, but which runs upward as far as a catholic school (Tr. Ev. 72–73); that he used to see the fence for about three or four years after the delivery by Paco Román to José Toledo; that the lands on the south of the fence were the property of Nolla and that on the north the land was a continuation of the development, but that there were no houses (Tr. Ev. 73); that on a certain occasion he was directed by the District Court of Arecibo (now Superior Court) to make a survey of Olmo Development together with engineer Guillermo Martínez; that the witness represented José Toledo and engineer Guillermo Martínez represented Nolla (Tr. Ev. 74); that they marked all the points necessary for the survey in question, and when we arrived at No. 2 Street in order to enter No. 2 Avenue, which is the avenue which runs as far as Calle Nueva, i. e., Calle Nueva extension (point X, southwestern point of exhibit 12—plan of José A. Fusté), Martínez told him that he could not do it because those were not the points, to which the witness then answered: "This is the point which I know and this is the place where I have to mark it, and that he did not want to mark

it and I did not close the polygon" (Tr. Ev. 75) ; that if the point which the witness knew was the southern boundary of Olmo Development had been closed, the boundary would have extended as far as Calle Nueva extension in a straight line with Calle Nueva and No. 2 Avenue (Tr. Ev. 75) ; that if the polygon had been closed the way Nolla's engineer wanted to, it would have comprised part of No. 2 Street farther to the avenue; that according to what the witness believed and knew, by using this plan (exhibit 12) the polygon would have been closed at Calle Nueva extension (Tr. Ev. 76).

This being so, we can not conclude that the southern boundary, as shown on exhibit 12 (plan of José A. Fusté), is the product of a geometric abstraction and its juridical effectiveness a mere declaration of the registry. From an examination as a whole of the registration entries of the blueprints and of the oral testimony not contradicted by evidence to the contrary, the only possible conclusion is that the southern boundary of property 6772, where the portion in litigation is situated, is Calle Nueva extension according to Fusté's plan (exhibit 12), and any inference to the contrary is clearly erroneous.

Evidently the judge relied on his inspection of the land and his observation of the fact that the parcel of land in litigation and the remainder of the defendant's property form one single body of land. The act of appropriating that land took place in 1936 and the inspection was made in 1957, or almost one quarter of a century after the appropriation. There is no question that an inspection in these conditions can not reflect the situation existing in 1929, which is the year in which the segregation was made from property 6772 and the mortgage thereon constituted, among others of the same development, in favor of Félix Mauro Ginorio. The evidence discloses that after the appellee appropriated to himself the property in litigation he planted sugar cane therein,

which means that the natural landmarks which are generally taken into consideration in an inspection had disappeared. The situation to be reconstructed in this case on the basis of the Registry of Property, of the old plans, and of the oral testimony was the situation existing in 1929—date of segregation—and in 1935—foreclosure date.

Contrary to the holding of the judge, there is evidence in the record to show that during the period of appropriation by the appellee of the land in question the former owners took action to recover the possession, filed petitions for injunction, for survey, through judicial channels, in addition to proper extrajudicial steps. Mr. Toledo, one of the subsequent acquirers, attempted to set up a plan through civil engineer José A. Agostini but could not reach an agreement, and it is a fact that the present action was instituted since 1944. There is also evidence in the record to show that the former owner, Félix Mauro Ginorio, took possession by virtue of title vested in him by the marshal of the former District Court of Arecibo on January 13, 1936 (Tr. Ev. 240), and witness Francisco Román Rodríguez, owner who succeeded Ginorio, testified that about one month prior to the foreclosure of the property on October 11, 1935, Olmo had turned over to him the properties sought to be sold at public auction.

Contrary to the holding of the judge, the predecessor in title, Mercedes Goitía widow of Olmo, never recorded as separate property the portion of 5,619.32785 square meters in litigation. That portion forms part of the lot of 16,490 square meters which was segregated and recorded in 1929 as property No. 6772, and which, jointly with properties 6773, 6774, and 6775, the latter three properties being comprised in the lot situated between Streets 2 and 3 of Olmo Development according to Fusté's plan, were mortgaged in favor of Félix Mauro Ginorio.

. There is nothing in the evidence from which to infer that the widow of Olmo committed any inaccuracy or error in the

parceling of the property of approximately 9.73 cuerdas. The urbanizer preferred to divide the property into five lots fronting two vertical streets and one horizontal street and two avenues, the latter being parallel with highway No. 2 which runs from Arecibo to Hatillo. Instead of deciding on a fixed number of lots, she elected to sell the parcels by meters according to the demand in the market. We must not overlook the fact that the segregated property of approximately 9.73 cuerdas is still recorded as a rural property. The first description of Olmo Development as rural property—property 6038—(Tr. Ev. 89) was recorded on August 21, 1925 (Tr. Ev. 91–92). At this time the refinement in the art of urbanizing brought about by our present planning system did not exist in Puerto Rico. The division into lots and parceling according to the number of meters desired by the purchaser is the system prevailing in all lots from the commencement of the urbanization. Fusté's descriptive plan showing all the minor segregations from lot 6772 is evidence that that system is perfectly feasible. Contrary to the holding of the judge, all the segregations from the property of approximately 9.73 cuerdas and all the entries in the Registry of Property were made in the same manner.

▪ Now then, having clarified the question of the southern boundary of property 6772, the case is typical of an actual body of properties, that is, of a body of real property surrounded by clear and defined boundaries—X MANRESA, *Comentarios al Código Civil Español* 130 *et seq.* (Reus 5th ed. 1950), sold for a lump sum—first assumption of § 1360 of the Civil Code of Puerto Rico (1930)—31 L.P.R.A. § 3820, p. 272 (1956), in which case the sale is not altered by any claim arising out of any increase or diminution of the area.

▪ The fact that each party acquired the land by virtue of a mortgage foreclosure at public auction does not alter the juridical situation: Judgment of the Supreme Court of Spain of March 12, 1948. Similarly, considering isolatedly

the fact that the area of the property adjudicated to the plaintiff, comprised within certain clear and defined boundaries, was larger than that described as lying within such boundaries, and that the area of the property adjudicated to the defendant, comprised within certain clear and defined boundaries, was smaller than that described as lying within such boundaries, does not create any right in favor of the defendant. *Ex parte National City Bank of New York*, 53 P.R.R. 772, 776–77 (Travieso, 1938); *León v. Pérez*, 68 P.R.R. 823, 825 (Todd, Jr., 1948). A different result could not be reached in this case by a study of the retroactive performance—valid succession of owners, according to NÚÑEZ LAGOS—*Acción y Excepción en la Reivindicación de Inmuebles* 30 (Instituto Editorial Reus, Madrid, 1953), or by a study of the possession of the different parcels, because the entire original property belongs to one single owner, and the possession of the first lots the object of urbanization, comprised within certain clear and defined boundaries, is clearly established by the evidence. As a matter of fact, the only interruption in the possessory act takes place in connection with the portion of property 6772 in litigation and it is due to the defendant's antijuridical act.

On the other hand, the defendant was bound to prove, contrary to the facts established by the evidence for the plaintiff, that the portion claimed by him was in the possession of the plaintiff and not of any other adjacent owner.

The portion in litigation having been identified and its situation, area, and boundaries having been determined; the dominion title and the fact that the defendant is in possession of the portion in litigation having been established, *Velázquez v. Velázquez*, 82 P.R.R. 600, 611 (Blanco Lugo, 1961); *Goglas v. Heirs of Massanet*, 60 P.R.R. 199, 202 (Todd, Jr., 1942), the judgment should be reversed, the revendication sought granted, and the defendant ordered to return forthwith the following portion of property 6772:

"Lot situated in Olmo Development, ward of Hato Abajo of Arecibo, having an area of 5,619.32785 square meters, or 1.4297 cuerdas, equivalent to 56 ares, 19 centiares, and 32,785 milliares, described as follows: Starting at point X on the eastern side of Number Two Street, which is the northeastern corner of the intersection of the said Number Two Street and Number Two Avenue of Olmo Development, thence North 3 degrees 17 minutes West, and a distance of 68.56 meters to Point Y, situated on the eastern side of Number Two Street. Thence and alongside the boundary of Luis Pérez and Jaime Barceló, thence South 86 degrees East to point Z, situated in the interior side of the western sidewalk of the Urban Detour. Thence and alongside the interior of the said sidewalk, South 16 degrees 16 minutes East, and a distance of 11.00 meters to point A. Thence South, 30 degrees 9 minutes East, and a distance of 23.67 meters to point B; thence South, 35 degrees 46 minutes East, and a distance of 9.91 meters to point C; thence South, 35 degrees 6 minutes East, and a distance of 16.45 meters to point D; thence South, 42 degrees 38 minutes East, and a distance of 19.34 meters to point E, where the boundary along the interior side of the said sidewalk ends and is intersected by the northern side of No. 2 Avenue at the unconstructed section of that avenue; and thence along the northern side of Number Two Avenue, South 86 degrees 35 minutes West, and a distance of 104.60 meters to point X, where this description started."

determined in the plan of José A. Fusté (exhibit 12 of the plaintiff) : *Arce* v. *Díaz*, 77 P.R.R. 589, 592 (Belaval, 1954).